RECORD NO. 14-1226

IN THE
UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

MEE DIRECT, LLC; MEE APPAREL, LLC,

Plaintiffs – Appellants,

v.

TRAN SOURCE LOGISTICS, INC.; HOWARD CATES,

Defendants – Appellees.

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
AT BALTIMORE

**<u>RESPONSE BRIEF OF APPELLEE HOWARD CATES</u>**

REGER, RIZZO & DARNALL LLP

LOUIS J. RIZZO, JR., ESQUIRE
ARTHUR D. KUHL, ESQUIRE
1523 Concord Pike, Suite 200
Brandywine Plaza East
Wilmington, DE 19803
(302) 477-7100
Counsel for Appellee Howard Cates

UNITED STATES COURT OF APPEALS FOR THE FOURTH CIRCUIT
DISCLOSURE OF CORPORATE AFFILIATIONS AND OTHER INTERESTS

Disclosures must be filed on behalf of <u>all</u> parties to a civil, agency, bankruptcy or mandamus case, except that a disclosure statement is **not** required from the United States, from an indigent party, or from a state or local government in a pro se case. In mandamus cases arising from a civil or bankruptcy action, all parties to the action in the district court are considered parties to the mandamus case.

Corporate defendants in a criminal or post-conviction case and corporate amici curiae are required to file disclosure statements.

If counsel is not a registered ECF filer and does not intend to file documents other than the required disclosure statement, counsel may file the disclosure statement in paper rather than electronic form. Counsel has a continuing duty to update this information.

No. <u>14-1226</u>   Caption: <u>MEE DIRECT, LLC; ET AL. V. HOWARD CATES, ET AL</u>

Pursuant to FRAP 26.1 and Local Rule 26.1,

<u>HOWARD CATES</u>
(name of party/amicus)

who is _____<u>appellee</u>_____, makes the following disclosure:
(appellant/appellee/petitioner/respondent/amicus/intervenor)

1.   Is party/amicus a publicly held corporation or other publicly held entity?  ☐YES ☑NO

2.   Does party/amicus have any parent corporations?   ☐YES ☑NO
     If yes, identify all parent corporations, including grandparent and great-grandparent corporations:

3.   Is 10% or more of the stock of a party/amicus owned by a publicly held corporation or other publicly held entity?   ☐YES ☑NO
     If yes, identify all such owners:

4.  Is there any other publicly held corporation or other publicly held entity that has a direct financial interest in the outcome of the litigation (Local Rule 26.1(b))?    ☐ YES ☑ NO
    If yes, identify entity and nature of interest:

5.  Is party a trade association? (amici curiae do not complete this question)    ☐ YES ☑ NO
    If yes, identify any publicly held member whose stock or equity value could be affected substantially by the outcome of the proceeding or whose claims the trade association is pursuing in a representative capacity, or state that there is no such member:

6.  Does this case arise out of a bankruptcy proceeding?    ☐ YES ☑ NO
    If yes, identify any trustee and the members of any creditors' committee:

Signature: _____    Date: _____ 3/18/14 _____

Counsel for: Howard Cates _____

## CERTIFICATE OF SERVICE
**\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\***

I certify that on _____ 3/18/14 _____ the foregoing document was served on all parties or their counsel of record through the CM/ECF system if they are registered users or, if they are not, by serving a true and correct copy at the addresses listed below:

Ted Poretz, Esquire                          Brian W. Casto, Esquire
Ellenoff Grossman & Schole                   Miles & Stockbridge P.C.
1345 Avenue of the Americas, 11th Floor      10 Light Street
New York, NY 10105                           Baltimore, MD 21202

_____              _____ 3/18/14 _____
        (signature)                                   (date)

- 2 -

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES…………………………………………………………..ii

PRELIMINARY STATEMENT………………………………………….….……1

JURISDICTIONAL STATEMENT…………………………………….…….…...1

COUNTER STATEMENT OF THE ISSUES PRESENTED……………..………2

STATEMENT OF THE CASE……………………………………….….…...2

    a.  Procedural History………………………………………….…..…...2

    b.  The Facts………………………………………………………….….3

SUMMARY OF THE ARGUMENT………………………………………..….4

STANDARD OF REVIEW………………………………………………..…5

ARGUMENT……………………………………………………………...5

    POINT I……………………………………………………………5

    CATES IS ENTITLED TO SUMMARY JUDGMENT
    AGAINST MEE ON ITS CAUSE OF ACTION FOR
    PIERCING THE CORPORATE VEIL…………………………….…..5

    POINT II…………………………………………………………16

    CATES IS ENTITLED TO SUMMARY JUDGMENT
    AGAINST MEE ON ITS CAUSE OF ACTION FOR
    UNJUST ENRICHMENT……………………………………………..16

CONCLUSION……………………………………………………..18

REQUEST FOR ORAL ARGUMENT………………………………………19

CERTIFICATE OF COMPLIANCE

CERTIFICATE OF FILING AND SERVICE

<u>TABLE OF AUTHORITIES</u>

<u>Page(s)</u>

<u>CASES</u>

*Baltimore Line Handling Co. v. Brophy*,
    771 F. Supp. 2d  531 (D. Md. 2010)…………………………………………9, 13

*Bart Arconti & Sons, Inc. v. Ames-Ennis, Inc.*,
    275 Md. 295, 340 A.2d 225 (1975)……………………………………………6-7

*Berry & Gould, P.A. v. Berry*,
    360 Md. App. 142; 757 A.2d 108 (2000)…………………………………………..16

*Colandrea v. Colandrea*,
    42 Md. App. 421, 401 A.2d 480 (1979)…………………………………………..7

*Everhart v. Miles*,
    47 Md. App. 131, 422 A.2d 28 (1980)……………………………………………16

*Ferguson Trenching Co. v. Kiehne*,
    329 Md. 169, 618 A.2d 735 (1993)…………………………………………7, 9

*Hildreth v. Tidewater Equipment Co., Inc.*,
    378 Md. App. 724, 838 A.2d 1204 (2003)………………………………8, 12

*Hill v. Lockheed Martin Logistics Mgmt., Inc.*,
    354 F.3d 277 (4th Cir. 2004)…………………………………………………..5

*Meyers v. Lamer*,
    743 F.3d 908 (4th Cir. 2014)…………………………………………………..5

*Quinn v. Quinn*,
    11 Md. App. 638, 276 A.2d 425 (1971)……………………………………………7

*Residential Warranty Corp. v. Bancroft Homes Greenspring Valley, Inc. et al.*,
    126 Md. App. 294, 728 A.2d 783 (1999)…………………………...5-7, 9, 13

*Serio v. Baystate Properties, LLC*,
    209 Md. App. 545, 60 A.3d 375 (2013)…………………………………………7, 13

*Sirona Dental Sys., LLC v. Stevenson Group, Inc.*,
    2013 U.S. Dist. LEXIS 104230 (D. Md. July 25, 2013)…………………..13

*Stanley v. Cent. Garden & Pet Corp.*,
    891 F. Supp. 2d 757 (D. Md. 2012)……………………………………………9

*Starfish Condominium Ass'n v. Yorkridge Serv. Corp., Inc.*,
    295 Md. 693, 458 A.2d 805 (1983)………………………………………7-8

*Stein v. Smith*,
    358 Md. 670, 751 A.2d 504 (2000)……………………………………………6

*Travel Committee, Inc. v. Pan American World Airways, Inc.*,
    91 Md. App. 123, 603 A.2d 1301 (1992)…………………………...7, 13-14

*VF Corp. v. Wrexham Aviation Corp.*,
    350 Md. 693, 703 (Md. App. 1998)……………………………………………9

## **STATUTES**

28 U.S.C. § 1332……………………………………………………………...1

28 U.S.C. § 1291……………………………………………………………...1

## PRELIMINARY STATEMENT

Howard Cates ("Cates" or "Appellee"), by and through his attorneys, Reger Rizzo & Darnall LLP, hereby submits this Brief in support of his response to the appeal by MEE Direct, LLC and MEE Apparel, LLC (collectively referred to herein as "MEE" or "Appellants") from the decision of Hon. James K. Bredar granting Cates' motion for summary judgment and dismissing all claims against him, and denying MEE's cross-motion for summary judgment against Cates.

## JURISDICTIONAL STATEMENT

The District Court had subject matter jurisdiction over this dispute pursuant to 28 U.S.C. § 1332 because Cates is a citizen of Pennsylvania, Tran Source Logistics, Inc. ("TSL") is a citizen of Maryland, both Appellants are citizens of New York, and the amount in controversy exceeds $75,000.

This Court has jurisdiction pursuant to 28 U.S.C. § 1291 which grants appellate review of final decisions of district courts of the United States. Counsel certifies that the instant appeal arises from a final decision of the United States District Court for the District of Maryland, dated February 14, 2014, granting Cates' motion for summary judgment and denying MEE's cross-motion for summary judgment against Cates. The Notice of Appeal was filed on March 13, 2014.

## COUNTER STATEMENT OF THE ISSUES PRESENTED

1. Whether the Trial Court was correct in granting summary judgment to Cates and dismissing MEE's claim to pierce TSL's corporate veil in order to impose personal liability on Cates when there was no evidence of fraud or the need to enforce a paramount equity?

2. Whether the Trial Court was correct in granting summary judgment to Cates and dismissing MEE's claim for unjust enrichment against him where the evidence showed that no benefit was conferred upon Cates by MEE and that the acceptance or retention by Cates of the payments he received from TSL were not made under such circumstances as to make it inequitable for Cates to retain them?

## STATEMENT OF THE CASE

### a. Procedural History

Appellants commenced this action on or about August 10, 2012 by filing a Summons and Complaint (the "Complaint," found on pages 21 through 28 of the Record on Appeal[1]) in the New York State Supreme Court for the County of New York. TSL and Cates removed the action to the Southern District of New York, in which forum TSL filed an Answer and Cates moved to dismiss on jurisdictional grounds. Pursuant to the Order of Hon. Shira A. Scheindlin dated December 26,

---

[1] References to the Record on Appeal will be by the prefix "A" followed by the page citation.

2

2012, the entire action was transferred to the District of Maryland and assigned to Hon. James K. Bredar. Following unilateral discovery (TSL and Cates took none), Cates moved for summary judgment seeking to dismiss all claims against him individually, and MEE cross-moved seeing summary judgment against each of Cates and TSL jointly and severally. The trail court granted summary judgment in favor of MEE as against TSL, and in favor of Cates dismissing all claims against him.

This Appeal Followed. TSL did not cross-appeal.

**b. The Facts**

TSL is a corporation organized and existing under the laws of the State of Maryland. A22-23¶ 2. Cates is the President and principal of TSL. See A23 ¶ 3.Appellants, MEE Direct, LLC and MEE Apparel, LLC (collectively "MEE"), are limited liability companies organized and existing under the State of Delaware and the State of New Jersey, respectively. See A22 ¶ 1.

By contract dated June 29, 2009, MEE entered into an agreement with TSL under which TSL would perform certain services for MEE in exchange for a monthly fee paid to TSL (the "Agreement"). See A23 ¶¶ 4, 5, 6 and A30-31. TSL's services included, but were not limited to, reviewing and auditing freight bills, confirming delivery of shipments, payment of freight bills, and recovering overpayments made by MEE to their carriers. See A23 ¶¶ 4, 5, A30-31, and A35-

36 pp. 13:4-14:14.  MEE, in turn, would submit payments to TSL.  See A23 ¶¶ 4, 6.

Between 2009 and 2011, MEE utilized TSL's services, as described above, to facilitate shipping services rendered by MEE shippers.  See A23-24 ¶¶ 4, 5, 7.  MEE paid TSL for services, but TSL breached the Agreement by failing to pass on $368,000 to MEE shippers.  See A24 ¶¶ 7, 9, 10.  MEE claims that Cates personally benefited from the monies MEE remitted to TSL.  See A25 ¶¶ 16, 17.  Cates denies these allegations.  A63 ¶¶ 16, 17-19.  Furthermore, MEE claims that Cates utilized TSL's corporate form to perpetrate a fraud upon MEE, and utilized MEE's money transfers for his own direct or indirect benefit.  See A25 ¶¶ 17, 18.  Cates denies these allegations as well.  A63 ¶¶ 17-19.

MEE filed the Complaint in this matter to recover damages resulting from breach of contract, unjust enrichment, and breach of fiduciary duty by TSL, and further sought to pierce the corporate veil to establish individually liability upon Cates for unjust enrichment and breach of fiduciary duty.  See A20-28.

## SUMMARY OF THE ARGUMENT

Cates is entitled to summary judgment against MEE's claims to pierce the corporate veil and for unjust enrichment.  The corporate veil should not be pierced because Cates made no fraudulent misrepresentations to MEE.  Even if he did

make representations to MEE that, in time, proved to be inaccurate, such representations were not made knowingly or with a reckless disregard for the truth. Further, Cates respected corporate formalities and did not hide behind the corporate shield. Finally, Cate was not unjustly enriched because he received no benefit from the payments from MEE to TSL and because he was entitled to retain any payments he received from TSL.

This Court should affirm the decision of the Trial Court, which entered summary judgment of Cates and against MEE.

## STANDARD OF REVIEW

The Court shall review the decision of the Trial Court de novo. *See Meyers v. Lamer*, 743 F.3d 908, 911 (4th Cir. 2014); *Hill v. Lockheed Martin Logistics Mgmt., Inc.*, 354 F.3d 277, 283 (4th Cir. 2004).

## ARGUMENT

## POINT I

## CATES IS ENTITLED TO SUMMARY JUDGMENT AGAINST MEE ON ITS CAUSE OF ACTION FOR PIERCING THE CORPORATE VEIL

### A. Argument Standard

Maryland is a highly restrictive jurisdiction in allowing plaintiffs to pierce the corporate veil. *Residential Warranty Corp. v. Bancroft Homes Greenspring*

*Valley, Inc. et al.*, 126 Md. App. 294, 728 A.2d 783, 790-91 (1999). The standard has been explained as follows:

> The most frequently enunciated rule in Maryland is that although the courts will, in a proper case, disregard the corporate entity and deal with substance rather than form, as though a corporation did not exist, shareholders generally are not held individually liable for debts or obligations of a corporation except where it is necessary to prevent fraud or enforce a paramount equity.

*Residential Warranty Corp.*, 728 A.2dat 789 (citing *Bart Arconti & Sons, Inc. v. Ames-Ennis, Inc.*, 275 Md. 295, 340 A.2d 225, 234 (1975). It remains the law in Maryland that "the corporate entity will be disregarded only when necessary to *prevent fraud* or to *enforce a paramount equity.*" *Stein v. Smith*, 358 Md. 670, 682, 751 A.2d 504 (2000) (emphasis added).

Maryland is so opposed to piercing the corporate veil that in *Bart Arconti & Sons, Inc.*, the Court recognized the following:

> The two principals caused loans to be made from the corporation to themselves and subsequently reduced their indebtedness by crediting the loans against apparent unpaid salaries that were due them. This and other actions of the principals, designed to evade legal obligations during the pendency of an action against the corporation, rendered the company nearly insolvent. The Court of Appeals, however, held that "the corporate entity [may not] be disregarded merely because it wished to prevent an 'evasion of legal obligations' -- absent evidence of fraud or similar conduct."

*Residential Warranty Corp.*, 728 A.2d at 791 (citing *Bart Aconti & Sons*, 275 Md. at 312). Where there is no evidence of fraud, there is no material dispute of fact to adjudicate with respect to piercing the corporate veil. *Serio v. Baystate Properties, LLC*, 209 Md. App. 545, 60 A.3d 375 (2013). See, e.g., *Travel Committee, Inc. v. Pan American World Airways, Inc.*, 91 Md. App. 123, 159, 603 A.2d 1301 (1992) (Finding no evidence of fraud and that evidence of siphoning of corporate funds was conflicting, there was no justification to pierce the corporate veil); *Colandrea v. Colandrea*, 42 Md. App. 421, 401 A.2d 480 (1979) (Pierced the corporate veil because the record contained evidence of fraud); *Quinn v. Quinn*, 11 Md. App. 638, 649 276 A.2d 425 (1971) (finding no grounds to pierce the corporate veil because no evidence of fraud); *Starfish Condominium Ass'n v. Yorkridge Serv. Corp., Inc.*, 295 Md. 693, 714-20, 458 A.2d 805 (1983) ("Without factual evidence to link the distributions to fraudulent actions, appellant is unable to generate a genuine dispute of material fact"); *Ferguson Trenching Co. v. Kiehne*, 329 Md. 169, 175, 618 A.2d 735 (1993) ("[W]hen an official or agent signs a contract for his corporation it is simply a corporate act. It is not the personal act of the individual, and he is not personally liable for the corporate contract unless the matter is tainted by fraud…").

**B. Cates is Entitled to Judgment as a Matter of Law Against MEE's Cause of Action for Piercing the Corporate Veil**

**i. MEE has failed to set forth facts that establish a right to pierce the corporate veil based on fraud**

MEE alleges piercing the corporate veil as a cause of action. The Trial Court's award of summary judgment for Cates on this cause of action should be affirmed because there is no genuine dispute as to any material fact and Cates is entitled to judgment with regard to this cause of action as a matter of law. Maryland Courts will permit the corporate veil to be pierced when the corporation is used as a mere shield for the perpetration of a fraud. *Hildreth v. Tidewater Equipment Co., Inc.*, 378 Md. App. 724, 838 A.2d 1204 (2003). The "burden of proof is on the one charging fraud to establish by clear, specific acts, facts that in law constitute fraud." *Starfish Condominium Ass'n*, 295 Md. 693. In order to establish fraud, the following must be proven with clear and convincing evidence:

> (1) that the defendant made a false representation to the plaintiff, (2) that its falsity was either known to the defendant or that the representation was made with reckless indifference as to its truth, (3) that the misrepresentation was made for the purpose of defrauding the plaintiff, (4) that the plaintiff relied on the misrepresentation and had the right to rely on it, and (5) that the plaintiff suffered compensable injury resulting from the misrepresentation.

*VF Corp. v. Wrexham Aviation Corp.*, 350 Md. 693, 703 (Md. App. 1998). *Stanley v. Cent. Garden & Pet Corp.*, 891 F. Supp. 2d 757, 767 (D. Md. 2012)(citing *Baltimore Line Handling Co. v. Brophy*, 771 F. Supp. 2d 531, 553 (D. Md. 2010). Further, to find that the corporate cloak has been used to perpetrate fraud, Maryland courts have looked for clear and convincing evidence of "deliberate intention and purpose of cheating and defrauding. *Id.* However, when no factual evidence exists as proof that actions were made with the intent to defraud, summary judgment is appropriate. *Residential Warranty Corp.*, 728 A.2d at 793. Further, Maryland courts require parties seeking to pierce the corporate veil by alleging fraud to meet a higher standard and make a more vigorous factual showing than do other jurisdictions. *Stanley*, 891 F. Supp. At 767.

MEE has no facts of record to support its claim to pierce the corporate veil based on fraudulent conduct of Cates. There is no evidence that Cates used TSL as a mere shield to perpetrate a fraud. Executing an agreement on behalf of a corporation does not give rise to personal liability. *Ferguson Trenching Co.*, 329 Md. at 178. Cates, as President of TSL, acted only in his capacity as President of TSL, not as an individual, when he executed the Agreement that provided services to MEE. A31 and A37 p. 15:9-11. TSL maintained multiple bank accounts; a checking account for general expenses and a customer freight account. A54-56 pp. 79:1-81:4. TSL employs two individuals, Toni Dixon and Karlynn Lowell. A37,

9

39 pp. 15:12-19, 22:1-7. Dixon is responsible for, among other duties, paying vendors, auditing invoices, separating freight invoices by account for customers, and managing transfers between TSL bank accounts. A46-47, 55-56 pp. 57:12-58:3, 80:10-81:4. In addition to Dixon and Lowell, TSL hired an independent contractor, Pat Slayton, to fulfill their accounting needs. A50 p. 73:16-25. At the time MEE and TSL entered into the Agreement, Cates did not receive a salary from TSL. See A31 and A51-52 pp. 74:21-75:3. Presently, Cates continues to work for TSL without a salary. A51-53 pp. 74:21-76:17. When TSL entered into the Agreement with MEE, TSL did not believe there would be an issue with timely paying carriers. A48-49 pp. 61:13-62:4. There is no evidence on the record that indicates Cates acted fraudulently in his capacity at TSL.

MEE's unsupported allegations are not sufficient to establish fraud. MEE fails to provide any factual evidence as proof that Cates' used TSL as a mere shield for the perpetration of a fraud. Cates did not personally benefit from TSL. To the contrary, the evidence shows that Cates has not received a salary from TSL since approximately 2006 or 2007. A51-53 pp. 74:21-76:17. In sum, no facts of record indicate that Cates utilized TSL to defraud MEE.

Based on this record, the Trial Court properly found that there was no fraud committed by Cates. A245. As a preliminary matter, the Trial Court noted that Cates did not make any false representations to the Plaintiffs. A244.The Trial

10

Court reasoned that while it was true that Cates' did not inform MEE about TSL's financial situation prior to signing the Agreement, MEE never inquired. *Id.* Therefore, not only did Cates not make a false representation regarding TSL's financial situation, he made no representation whatsoever. Further, the Trial Court stated that even if Cates had made a false representation as to TSL's ability to satisfy its contractual obligation to pay MEE's freight carriers upon receipt of funds, these representations would have been neither knowingly made nor made with a reckless disregard for the truth, as Cates believed TSL would be able to make timely payments to MEE's vendors using service fees collected from TSLA244-45.

Further, the Trial Court reasoned that Cates did not represent that MEE's funds would be used exclusively to pay MEE's freight carriers. A244. Instead, the Agreement provided only that "[TSL] agrees to:…after receipt of funds sent or transferred to [TSL], checks will be generated for disbursement of carrier payment." *Id.* The Trial Court noted that the Agreement does not contain any representation that the funds received from MEE must be used exclusively to pay MEE's freight carriers. *Id.* Nor does the Agreement require that TSL segregate those funds for no other purpose than to make MEE's carrier payments. *Id.* In fact, as the Trial Court observed, the Agreement did not even require TSL to segregate the funds whatsoever. *Id.* As the Trial Court noted, if MEE had wanted

11

TSL to hold its funds in trust in a segregated account so that such funds could only be used to make MEE's carrier payments, then MEE should have negotiated for this requirement as part of the Agreement.  *Id*.  Without this requirement being part of the Agreement, TSL had no obligation to do so and Cates did not represent that it would do so.

Because of these facts, the Trial Court properly found that MEE failed to show that Cates made a false representation to MEE or that any representation that was, in fact, false was either known to Cates or was made by Cates with reckless indifference as to its truth.  Accordingly, MEE failed to show that they were defrauded by Cates.  Therefore, the Trial Court judgment  entered in Cates' favor and against MEE,on its claim for piercing the corporate veil based on fraud, should be affirmed.

### ii.  MEE has failed to establish piercing the corporate veil is necessary for a paramount equity

Where there is no evidence of fraud, piercing the corporate veil is permitted to establish a paramount equity[2].  "Paramount equity is applied with *great cautionand reluctance* and only in *exceptional circumstances*."  *Hildreth,* 838 A.2d at 1210 (emphasis added).  However, as the Trial Court noted, "Maryland is averse to disregarding the entity shield in a business situation in the absence of fraud."

---

[2] Maryland case law does not define paramount equity, but it is defined in Black's Law Dictionary as: "[a]n equitable right or claim which is prior, superior, or preferable to that with which it is compared."  Blacks Law Dictionary (5th ed. 1983).

*Serio*, 60 A.3d at 488.However, attempts by plaintiffs to pierce the corporate veil have routinely failed where fraud was not present. *See Residential Warranty Corp.*, 728 A.2d 789*; Travel Committee, Inc.* 91 Md. App. at 156.  In fact, "no court in Maryland has apparently ever pierced the corporate veil to enforce a paramount equity." *Sirona Dental Sys., LLC v. Stevenson Group, Inc.*, 2013 U.S. Dist. LEXIS 104230 (D. Md. July 25, 2013).  See *Baltimore Line Handling Co. v. Brophy*, 771 F. Supp. 2d 531, 554 (D. Md. 2010); *Residential Warranty Corp.*, 728 A.2d at 789. As the *Travel Committee* Court stated: "notwithstanding its hint that enforcing a paramount equity might suffice as a reason for piercing the corporate veil, the Court of Appeals to date has not elaborated upon the meaning of this phrase or applied it in any case of which we are aware." 91 Md. App. at 158.  In *Serio*, the Court found the defendant sole shareholder was "personally involved" in a transaction where there was evidence of bad faith and conscious evasion of responsibility, and the corporation illegally conducted business in Maryland because it was not registered.  209 Md. App. at 562.  Even under these circumstances, the Court of Appeals determined it was not sufficient to pierce the corporate veil to enforce a paramount equity.  *Id*.

A corporate entity will be disregarded to prevent evasion of legal obligations or where the stockholders themselves fail to observe the corporate entity and operate the business or deal with the corporation's property as if it were their own.

*Id*. at 563.  The following factors are commonly considered in piercing the corporate veil as to a single corporation for paramount equity: undercapitalization, failure to observe corporate formalities, failure to issue stock or pay dividends, operating without a profit, commingling of corporate and personal assets, non-functioning officers and directors, whether the corporation is insolvent at the time of the transaction and the absence of corporate records.  *Travel Committee, Inc.*, 91 Md. App. at 158.

As the Trial Court properly determined from the evidence, MEE failed to provide any evidence that TSL was undercapitalized, corporate formalities were not observed, there were non-functioning corporate directors, TSL failed to issue stock or pay dividends, the company was insolvent when it entered into the Agreement with MEE, or there were no corporate records.  Furthermore, there is no evidence that Cates commingled corporate and personal assets.  To the contrary, Cates did not personally gain from TSL.  At the end of 2003, he reduced his salary to $40,000.  A52-53 pp. 75:23-76:5.  His reduction in salary lasted for approximately two years, at which time he eliminated his salary in 2006 or 2007.  A53 p. 76:5-7.  At the time TSL entered into the Agreement with MEE, Cates was not taking a salary.  See A31 and A53 p. 76: 5-7.  TSL maintained multiple bank accounts; a general expense account and a customer freight account.  A55-56 pp. 80:25-81:4.  These accounts were used to operate TSL, and Dixon was primarily

responsible for transferring money between the accounts, not Cates. A55-56 pp. 80:25-81:4. TSL was operating at a time when the economy was very poor. A43 p. 44:14. Cates did not commingle any funds with TSL. To the contrary, Cates provided a loan to TSL on more than one occasion. A40-42 pp. 38:7–40:1. Additionally, upon the previous owner's departure from TSL, he loaned the company $100,000 in an attempt to settle debts. A44-45 pp. 46:19–47:5. The only money paid to Cates from TSL was for reimbursement of expenses and repayment of the various loans. A52 p. 75:3-15. TSL followed corporate formalities; TSL is a registered Maryland corporation that was established with Articles of Incorporation. See A22-23 ¶ 2, A62 ¶ 2, A38 p. 17:2-4. The Trial Court found no evidence that Cates acted in a manner which warrants piercing the corporate veil for a paramount equity.

It is well settled that the Maryland courts will pierce the corporate veil based on proof that it is necessary to prevent a fraud or to enforce a paramount equity. However it is equally settled that Maryland is a highly restrictive jurisdiction in deciding to pierce the corporate veil. MEE failed to provide any facts that support piercing the corporate veil by way of fraud or to establish a paramount equity. Therefore, the Trial Court properly found that MEE failed to show that there was a need to enforce a paramount equity. With this, the judgment in Cates' favor and

against MEE,on its claim for the corporate veil based on paramount equity, should be affirmed.

## POINT II

### CATES IS ENTITLED TO SUMMARY JUDGMENT AGAINST MEE ON ITS CAUSE OF ACTION FOR UNJUST ENRICHMENT

MEE alleges unjust enrichment as a cause of action.  The Trial Court's award of summary judgment for Cates on this cause of action should be affirmed because there is no genuine dispute as to any material fact..  The general principal of unjust enrichment is: "[a] person who receives a benefit by reason of an infringement of another person's interest, or of loss suffered by the other, owes restitution to [them] in the matter and amount necessary to prevent unjust enrichment."  The Court of Appeals of Maryland defined unjust enrichment as constituting three elements:

> 1. A benefit conferred upon the defendant by plaintiff; 2. An appreciation or knowledge by the defendant of the benefit; and 3. The acceptance or retention by the defendant of the benefit under such circumstances as to make it inequitable for the defendant to retain the benefit without the payment of its value.

*Berry & Gould, P.A. v. Berry*, 360 Md. App. 142; 757 A.2d 108 (2000) (quoting *Everhart v. Miles*, 47 Md. App. 131, 136, 422 A.2d 28, 31 (1980)).  MEE did not

confer a benefit upon Cates, nor was there an appreciation or knowledge by Cates of a benefit. See A30-31. All activities and transactions were done by TSL with MEE. The Agreement was between TSL and MEE, where those entities benefited from the Agreement. See A30-31. The Agreement was formed between TSL and MEE; Cates signed the Agreement only in his capacity as President of TSL. See A30-31. Furthermore, Cates did not receive or retain any benefit of the payments, which were to TSL. See A51-52 p. 74:21-75:3. None of the payments to TSL by MEE were diverted to Cates. TSL kept separate bank accounts for operating expenses and a customer freight account. See A54-56 pp. 79:1-81:4. Cates was not receiving a salary at the time TSL entered into the Agreement with MEE, and he continues without a salary. See A51-52 p. 74:21-75:17. As such, there is no cause of action for unjust enrichment because Cates did not receive or retain any benefit from MEE.

The Trial Court correctly held that the claim for unjust enrichment against Cates fails. A241. The Court reasoned that, in this case, the first element of unjust enrichment was lacking because no benefit was conferred upon Cates by MEE. A241-42. As the Court noted, the $368,000 at issue was paid directly to TSL and not to Cates. A241.TSL used the $368,000 it received from MEE to pay various liabilities that TSL had incurred. A242. While these various liabilities may have included car allowance payments and loan repayments to Cates, they also included

vendor payments on behalf of other clients, salary payments to the company's other employees, and other various expenses, such as rent. *Id.* Further the car allowance payments and the loan repayments to Cates were expenses on behalf of the company and did not benefit Cates personally. *Id.* Finally, the Court specifically pointed to the fact that Cates had not drawn a salary from TSL since 2007. *Id.* With these facts, the Court correctly found that no benefit was conferred upon Cates by MEE.

Based upon the foregoing facts, the Court also properly held that MEE could not meet the third element for unjust enrichment because the acceptance or retention by Cates of payments he received from TSL were not made under such circumstances as to make it inequitable for Cates to retain them. *Id.* Because the first and third element of unjust enrichment cannot be shown, it was proper for the Court to grant Cates judgment on Count II. Therefore, the Trial Court judgment should be affirmed.

## <u>CONCLUSION</u>

For the foregoing reasons, Cates respectfully submits that the decision of the Trial Court should be affirmed, and that summary judgment should be granted in his favor and against MEE for piercing the corporate veil and unjust enrichment.

## <u>REQUEST FOR ORAL ARGUMENT</u>

Cates does not request that the Court schedule oral argument on this appeal.


Dated:  May 21, 2014                     Respectfully Submitted,

                                        REGER, RIZZO & DARNALL LLP

                                        */s/ Louis J. Rizzo, Jr., Esquire*
                                        Louis J. Rizzo, Jr., Esquire
                                        Arthur D. Kuhl, Esquire
                                        1523 Concord Pike, Suite 200
                                        Brandywine Plaza East
                                        Wilmington, DE 19803
                                        (302) 477-7100
                                        Attorneys for Appellees
                                        Tran Source Logistics, Inc. and
                                        Howard Cates

## CERTIFICATE OF COMPLIANCE

1.  This brief complies with the type-volume limitation of Fed. R. App. P. 28.1(e)(2) or 32(a)(7)(B) because:

    [X] this brief contains [4,162] words, excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii), *or*

    [ ] this brief uses a monospaced typeface and contains [*state the number of*] lines of text, excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii).

2.  This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because:

    [X] this brief has been prepared in a proportionally spaced typeface using [Microsoft Word] in [Times New Roman 14 pt.]; *or*

    [ ] this brief has been prepared in a monospaced typeface using [*state name and version of word processing program*] with [*state number of characters per inch and name of type style*].

Dated:  May 22, 2014                 */s/ Louis J. Rizzo, Jr.*
                                     Counsel for Appellees

## <u>CERTIFICATE OF FILING AND SERVICE</u>

I hereby certify on this 22nd day of May, 2014, I caused this Response Brief of Appellee Howard Cates to be filed electronically with the Clerk of the Court using the CM/ECF System, which will send notice of such filing to the following registered CM/ECT users:

| | |
|---|---|
| Ted Poretz, Esquire | Brian W. Casto, Esquire |
| Ellenoff Grossman & Schole | Miles & Stockbridge P.C. |
| 1345 Avenue of the Americas | 10 Light Street |
| 11th Floor | Baltimore, DE 21202 |
| New York, NY  10105 | |

*Counsel for Appellants*

I further certify that on this 22nd day of May, 2014, I caused the required copies of the Response Brief of Appellee Howard Cates to be mailed by U.S. First Class Mail to the Clerk of the Court.

*/s/ Louis J. Rizzo, Jr.*
Counsel for Appellee